UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRANDOSE MURPHY,

    Petitioner,

v.

DEBRA SCUTT,

    Respondent.
_____/

Case No. 12-cv-13720
Hon. Matthew F. Leitman

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #5); DENYING A CERTIFICATE OF APPEALABILITY; AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Trandose Murphy ("Murphy"), confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* the "Petition," ECF #5.) Murphy, acting *pro per*, challenges his conviction for third-degree criminal sexual conduct, M.C.L. § 750.520d. For the reasons discussed below, Murphy's Petition is **DENIED**.

### FACTUAL BACKGROUND

In mid-2006, Murphy separated from his wife, Latrece Murphy ("Latrece"). (*See* Transcript I at 177, Pg. ID 416; Transcript II at 25, Pg. ID 481.) Murphy moved out of the house that he shared with Latrece and her then-seventeen-year-

old daughter (Murphy's stepdaughter), Tyerra.[1] (*See* Tr. I at 103, Pg. ID 342.) However, Murphy continued to sleep at Latrece's house on occasion. (*See id.* at 177, Pg. ID 416.)

Shortly after midnight on December 7, 2006, Murphy arrived at Latrece's house and spent the night in Latrece's room. (*See* Tr. II at 27, Pg. ID 482.) The following morning, after Latrece left for work, Murphy was alone in the house with Tyerra. (*See* Tr. II at 103, Pg. ID 342.) Murphy was awakened by a telephone call from Latrece, who asked to speak to Tyerra. (*See* Tr. II at 28, Pg. ID 483.) Murphy entered Tyerra's room, tapped her on the shoulder to wake her up, and handed her the phone. (*See* Tr. I at 106, Pg. ID 345.) Murphy then left the room. (*See id.* at 108, Pg. ID 347.)

At Murphy's trial, Tyerra testified as follows about the ensuing events. After Tyerra finished talking to Latrece, she called Murphy back into her room to retrieve the telephone. (*See id.*) Murphy re-entered Tyerra's room and pulled the covers off of Tyerra. (*See id.*) Tyerra pulled the covers back over herself, but Murphy again threw off the covers. (*See id.* at 109, Pg. ID 348.) Murphy then grabbed Tyerra's ankles, pushed her legs apart, and put his hands on her knees. (*See id.* at 109-11, Pg. ID 348-50.) Tyrerra looked down and saw that Murphy was naked. (*See id.* at 111-12, Pg. ID 350-51.)

---

[1] Because Tyerra was a minor at the time of the offense, the Court will refer to her only by her first name to preserve her privacy.

2

Murphy performed cunnilungus on Tyerra, while Tyerra cried and hid her face under the covers. (*See id.* at 112-13, Pg. ID 351-52.) Although Tyerra did not tell Murphy to stop, she did not give him permission to do this to her. (*See id.* at 114, Pg. ID 353.) Murphy then put Tyerra's feet up to his chest, pushed her knees to her chest, placed his penis into her vagina, and started "humping" her. (*Id.* at 114-116, Pg. ID 353-55.) Tyerra tried to push away from Murphy with her feet, but he continued to penetrate her. (*See id.* at 116, Pg. ID 355.) Murphy then pulled his penis out and ejaculated on Tyerra's bed. (*See id.* at 117, Pg. ID 356.) Thereafter, Murphy again put his penis into Tyerra's vagina and humped her, while Tyerra continued crying under the covers. (*See id.* at 118, Pg. ID 357.) Murphy then got up and left. (*See id.* at 119.)

Shortly thereafter, Tyerra contacted her godmother and Latrece, who took her to the hospital. (*See id.* at 127, Pg. ID 366.) While at the hospital, Tyerra underwent a medical examination. (*See id.* at 127, 147; Pg. ID 366, 386.)

## **PROCEDURAL HISTORY**

Murphy was charged with two counts of third-degree criminal sexual conduct, M.C.L. § 750.520d. (*See* ECF #10-1 at 1, Pg. ID 219; Tr. II at 98, Pg. ID 553.) Murphy was tried in Wayne County Circuit Court (the "Circuit Court"), and on October 4, 2007, a jury convicted Murphy on both counts. (*See* Tr. II at 112, Pg. ID 567.) Murphy was sentenced to concurrent terms of 8 to 15 years imprisonment. (*See* ECF #10-6 at 7, Pg. ID 583.)

3

In 2008, Murphy filed a delayed application for leave to appeal his conviction. (*See* ECF #10-7 at 3, Pg. ID 588.) Both the Michigan Court of Appeals and Michigan Supreme Court denied Murphy leave to appeal. (*See* ECF #10-7 at 1, Pg. ID 586; ECF #10-8 at 1, Pg. ID 606.)

On August 30, 2010, Murphy filed a petition for writ of habeas corpus in this court. *See Murphy v. Howes*, No. 10-cv-13566, 2010 WL 3733951 (E.D. Mich. Sept. 20, 2010). The Court dismissed Murphy's petition because it contained claims that Murphy had not yet exhausted in state court. *See id.*

Murphy then filed a post-conviction motion for relief from judgment in the Circuit Court. (*See* ECF #10-11.) Murphy sought relief on four grounds: (1) the prosecutor improperly vouched for Tyerra's testimony at trial; (2) Murphy's trial counsel was ineffective in failing to challenge the prosecution's DNA evidence from Tyerra's mattress; (3) the trial judge failed to properly instruct the jury regarding the use of circumstantial evidence; and (4) Murphy's sentence violated the Double Jeopardy Clause of the Fifth Amendment. (*See id.*)

The Circuit Court denied Murphy's motion. (*See* ECF #10-12.) The basis of the Circuit Court's ruling is not entirely clear. The Circuit Court appeared to suggest that Murphy had procedurally defaulted his claims and failed to show good cause and prejudice to excuse his default, as required under M.C.R. 6.508(D)(3). (*See id.* at 2, Pg. ID 734.) However, before referencing Murphy's failure to show good cause and prejudice, the Circuit Court stated that Murphy's claims were

"without merit," and the Circuit Court proceeded to discuss extensively the merits of Murphy's claims. (*See id.*) With respect to the merits, the Circuit Court determined that (1) the prosecutor's argument that Tyerra lacked a motive to falsely accuse Murphy was not improper; (2) Murphy's counsel "was not ineffective for failing to … challenge the mattress DNA evidence" because Tyerra's testimony – not the DNA evidence – "was the basis for [Murphy's] conviction;" (3) the alleged deficiency in the jury instructions as to circumstantial evidence did not violate Murphy's rights because his conviction "rest[ed] on [Tyerra's] testimony;" and (4) Murphy's double-jeopardy rights were not violated because he was convicted of two separate acts of penetration. (*See id.* at 2-4, Pg. ID 734-36.)

Murphy then sought leave to appeal in the Michigan Court of Appeals and in the Michigan Supreme Court. Those courts denied leave to appeal on the ground that Murphy failed "to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." (ECF #10-9 at 1, Pg. ID 641; ECF #10-10 at 1, Pg. ID 670.)

Murphy filed the instant Petition on September 28, 2012. Murphy seeks habeas relief on two grounds. First, Murphy contends that his trial counsel was ineffective in failing to challenge the prosecution's DNA evidence, subpoena Tyerra's medical records, interview witnesses who performed (or were present for) Tyerra's examination at the hospital, and call its own expert witness. (*See id.* at 11-17, Pg. ID 67-73.) Second, Murphy argues that the prosecution failed to

introduce sufficient evidence to convict him of the charged crime.  (*See id.* at 17-24, Pg. ID 73-80.)

## GOVERNING LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review in habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

Indeed, the "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported … the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S.Ct. at 786.

# ANALYSIS[2]

## A. Murphy is Not Entitled to Habeas Relief Due to the Ineffective Assistance of Counsel

### 1. Legal Standard Governing Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, the United States Supreme Court set forth a two-part test to determine whether a habeas petitioner has received the ineffective assistance of counsel. 466 U.S. 668 (1984). First, a petitioner must show that his counsel's performance was deficient. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the petitioner must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

To satisfy the performance prong of *Strickland*, a habeas petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. On habeas review, a court's

---

[2] As an initial matter, Respondent Debra Scutt contends that Murphy's claims are barred by the statute of limitations. (*See* Response, ECF #9 at 26-35, Pg. ID 130-139.) Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n. 2 (6th Cir. 2006). This Court need not resolve the dispute over the timeliness of Murphy's habeas application because, as discussed below, Murphy's claims fail for other reasons independent of the statute of limitations.

scrutiny of counsel's performance is highly deferential. *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden is on the petitioner to overcome the presumption that the challenged action was sound trial strategy. *Id.* at 689.

To satisfy the prejudice part of the *Strickland* test, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To be a reasonable probability, it must be sufficient to undermine confidence in the outcome. *Id.* "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S.Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 2. Counsel's Failure to Challenge the DNA Evidence

Murphy first contends that his trial counsel was deficient in failing to challenge DNA evidence taken from Tyerra's mattress. (*See* Petition at 13-17, Pg.

9

ID 69-73.) Murphy argues that his counsel failed to cross-examine the prosecution's forensic expert regarding the laboratory procedures used to evaluate the DNA samples. (*See id.*) Murphy also asserts that his counsel did not ask the forensic expert when the semen found on the mattress was produced – a point which Murphy maintains is significant because (1) the mattress was located in Latrece's room until one month prior to the alleged sexual assault, and (2) he had ejaculated on the mattress during sexual intercourse with Latrece. (*See id.* at 16-17, Pg. ID 72-73.)

Murphy raised this ineffective assistance of counsel claim in his motion for relief from judgment in the Circuit Court. (*See* ECF #10-11.) Applying the *Strickland* standard, that court determined that the "mattress evidence [was] not newly discovered, nor [was] it sufficient to overcome the jury's verdict when the testimony of the victim was the basis for [Murphy's] conviction." (ECF #10-12 at 3, Pg. ID 735.) Stated another way, the Circuit Court determined that Murphy had not established that he was prejudiced by his counsel's alleged failure to challenge the prosecution's DNA evidence. Thus, the Circuit Court concluded that Murphy's attorney "was not ineffective for failing to … challenge the mattress DNA evidence." (*Id.*)

Under the "doubly" deferential standard of review applicable here, *see Harrington*, 131 S. Ct. at 788, the state court's conclusion that Murphy was not

entitled to relief was not unreasonable. Indeed, Murphy has not established the he was prejudiced by his counsel's alleged failure to challenge the DNA evidence because Tyerra's testimony, standing alone, was more than sufficient to establish Murphy's guilt beyond a reasonable doubt. Moreover, Murphy has not presented any evidence that if his counsel had cross-examined the forensic expert as Murphy claims counsel should have done, the answers to the questions would have been favorable to Murphy.

Furthermore, although the Circuit Court did not expressly address the performance prong of the *Strickland* test, Murphy has failed to demonstrate that his counsel's performance was deficient. The record demonstrates that Murphy's counsel exercised reasonable professional judgment in confronting the prosecution's forensic evidence. (*See* Tr. I at 170-74, Pg. ID 409-13.) In his cross-examination, Murphy's counsel focused on the forensic expert's admission that the medical examination performed on Tyerra at the hospital found no evidence of seminal fluid. (*See id.* at 173, Pg. ID 412.) Counsel's closing argument was based primarily on this admission. (*See* Tr. II at 77-78, Pg. ID 532-33.) Furthermore, Murphy's counsel *did* challenge the DNA evidence taken from Tyerra's mattress – he asserted during closing argument that the areas of the mattress that the expert tested were inconsistent with Tyerra's testimony as to where Murphy ejaculated. (*See id.* at 78-79, Pg. ID 533-34.) Thus, Murphy's counsel chose a trial strategy

11

that primarily emphasized the lack of forensic evidence in the medical examination and which also challenged the DNA evidence taken from Tyerra's mattress. In sum, Murphy's trial counsel appears to have implemented a reasonable and coherent strategy for confronting the prosecution's forensic evidence.

For these reasons, Murphy is not entitled to habeas relief on this ground.

### 3. Counsel's Failure to Subpoena Medical Records; Interview Witnesses; and Call Expert Witness

Murphy next contends that his trial counsel was deficient in failing to (1) subpoena Tyerra's medical records, (2) interview witnesses who performed (or were present for) Tyerra's examination at the hospital, and (3) call its own expert witness. (*See* Petition at 12-13, Pg. ID 68-69.) Murphy argues that Tyerra's medical records would have revealed whether Tyerra suffered any trauma to her vaginal area. (*See id.*) Murphy further argues that the alleged witnesses would have testified to Tyerra's demeanor during the examination and, therefore, could have undermined her credibility. (*See id.*) Murphy also argues that his counsel should have "consult[ed] or obtain[ed] a DNA expert." (*See id.* at 14, Pg. ID 18.) Murphy did not make these arguments in any of the state court proceedings in his case – instead, he raises the arguments for the first time in the instant Petition.

Because Murphy failed to present these claims to the state courts, the claims are procedurally defaulted. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Thus, this Court may not consider these claims unless Murphy has shown

12

cause and prejudice to excuse the default or demonstrated that this Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See id.* Murphy has not even attempted to present an explanation for his failure to raise his claims prior to filing a federal habeas petition, has not presented any new evidence supporting his claims, and has not shown that failure to review these claims would result in a miscarriage of justice. Accordingly, Murphy is not entitled to habeas relief on these grounds.

Even if these ineffective assistance of counsel claims were not procedurally defaulted, Murphy still would not be entitled to relief because he has failed to show that his counsel's allegedly deficient performance prejudiced him. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Moreover, a habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006).

Here, Murphy merely speculates, and provides no actual evidence, as to what Tyerra's medical records might show. Furthermore, Murphy has not submitted affidavits from alleged witnesses to Tyerra's medical examination concerning their proposed testimony and willingness to testify on the Murphy's behalf. Nor has Murphy offered evidence that there is an expert who would have

13

contradicted the testimony by Tyerra or the prosecution's forensic expert. Thus, Murphy would not be entitled to habeas relief on these ineffective assistance claims even if they were not defaulted.

**B. Murphy is Not Entitled to Habeas Relief Due to Insufficiency of Evidence**

Murphy also argues that he is entitled to habeas relief because the prosecution failed to prove all of the elements of third-degree criminal sexual conduct, M.C.L. § 750.520d. Specifically, Murphy asserts that the state did not introduce evidence proving that he used "[f]orce or coercion … to accomplish the sexual penetration." M.C.L. § 750.520d(1)(b). Murphy did not raise this issue in any of the state court proceedings in his case – he raises it for the first time in the instant Petition. Thus, for the reasons discussed above with respect to Murphy's defaulted ineffective assistance claims, this claim is procedurally defaulted.

Even if this claim were not procedurally defaulted, it would still fail for two reasons. First, the prosecution *did* present evidence from which the jury could have found that Murphy used force or coercion against Tyerra. When reviewing a sufficiency of the evidence claim, a court must determine whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original) (internal citation omitted). Murphy has not demonstrated that the

14

evidence was insufficient to convict him. Tyerra testified that Murphy twice pulled the bed covers off of her. (*See* Tr. I at 108-09, Pg. ID 347-48.) Tyerra also testified that Murphy grabbed Tyerra's ankles, pushed her legs apart, and put his hands on her knees. (*See id.* at 109-10, Pg. ID 348-49.) Moreover, Tyerra testified that she tried to push Murphy away with her feet, but she was unsuccessful. (*See id.* at 116, Pg. ID 355.) She also testified that she never consented to Murphy's actions. (*See id.* at 114, Pg. ID 353.) Under these circumstances, the prosecution presented sufficient evidence to convince a rational trier of fact that Murphy used force or coercion to accomplish sexual penetration.

Second, even if the prosecution had not presented sufficient evidence of force or coercion, it introduced sufficient evidence to convict Murphy of third-degree criminal sexual conduct on a separate theory. Under M.C.L. § 750.520d(1)(d), a person is guilty of third-degree criminal sexual conduct in the third degree if the person engages in sexual penetration with another person who is related "by blood or affinity to the third degree" – *even if the penetration is not accomplished by force or coercion*. A stepdaughter is a relative within three degrees of affinity, for purposes of M.C.L. § 750.520d. *See, e.g., People v. Goold*, 615 N.W.2d 794 (2000). At trial, Murphy admitted that Tyerra was his stepdaughter. (*See* Tr. II at 25, Pg. ID 480.) Thus, there was sufficient evidence to convince a rational trier of fact that – even absent force or coercion – Murphy was

guilty of violating M.C.L. § 750.520d. Accordingly, Murphy is not entitled to habeas relief on this ground.[3]

## CONCLUSION; DENIAL OF CERTIFICATE OF APPEALABILITY; AND DENIAL OF LEAVE TO APPEAL IN FORMA PAUPERIS

For all the reasons stated above, the Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

---

[3] Murphy also argues that his counsel was ineffective for failing to force the prosecution to "hold up [its] case to the full elements of the law." (Petition at 17, Pg. ID 21.) Because the evidence was not insufficient to prove the elements of the crime, Murphy is not entitled to relief based on ineffective assistance of counsel.

For the reasons stated in this opinion, Murphy has failed to make a substantial showing of the denial of a federal constitutional right. *See Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny Murphy leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

Accordingly, **IT IS HEREBY ORDERED** that the Petition for a Writ of Habeas Corpus (ECF #5) is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Murphy is **DENIED** leave to appeal *in forma pauperis.*

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: October 23, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113